556 A.2d 720

Oguz **TURGUT**

v.

Anne Christine **LEVINE.**

No. 998, Sept. Term, 1988.

Court of Special Appeals of Maryland.

April 27, 1989.

Kurt D. Karsten (Roy B. Cowdrey, Jr., Ray L. Earnest and Earnest & Cowdrey, P.A., on the brief), Easton, for appellant.

Gary A. Wais (Stephen L. Snyder, Howard A. Janet and Snyder & Janet, on the brief), Baltimore, for appellee.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

KARWACKI, Judge.

This case commenced with the filing of a medical malpractice claim in the Health Claims Arbitration Office by the appellee, Anne Christine Levine, in December of 1985. A hearing was held in January, 1987, before a Health Claims Arbitration panel which resulted in a unanimous award in favor of the appellant, Dr. Oguz Y. Turgut. Appellee rejected that award and brought an action to nullify the award in the Circuit Court for Anne Arundel County. On November 25, 1987, a jury returned a verdict in favor of appellee against appellant in the amount of $300,000. Dr. Turgut appeals from the judgment entered on that verdict. He poses two questions for our review:

I. Did the trial court commit error by restricting the defendant doctor's allowable testimony to non-expert

testimony, so as to severely prejudice the defendant's presentation of his case?

II. Did the trial court erroneously exclude evidence of Dr. Turgut's past success/failure rate with the repair technique he chose?

Since we view the two contentions raised by appellant as logically intertwined, we shall discuss them as a single issue.

## FACTS

Appellant delivered appellee's baby girl on June 20, 1982, at Anne Arundel General Hospital. Prior to delivery, appellant made an incision at the opening of the vagina on the rectal side, an episiotomy, in order to facilitate delivery of the baby. When signs of fetal distress developed, a forceps delivery was necessary, resulting in a fourth degree laceration through the mother's rectum. This extension of the episiotomy was repaired by the appellant and the appellee was kept at Anne Arundel General Hospital for several days postpartum.

On October 2, 1982, the appellee visited Dr. Turgut's office complaining of some discomfort. Appellant diagnosed appellee as suffering from a rectovaginal fistula [1] and scheduled her for surgery. On October 26, 1982, appellant performed a rectovaginal fistula repair on appellee. This repair was similar to the fourth degree laceration repair performed immediately after childbirth. [2] For both of these repair procedures, appellant employed a layering technique in suturing the area operated upon. [3]

---

1. A rectovaginal fistula is a tube of scar tissue between the rectum and the vagina which allows fecal matter and gas to pass from the rectum to the vagina.

2. In a rectovaginal fistula repair the scar tissue is located and excised. The area then is treated like a fourth degree laceration and repaired.

3. In utilizing this technique, Dr. Turgut first sutured together the ends of the bowel wall by taking his stitches through the entire bowel wall which consists of three layers including the rectal mucosa (the lining

In November of 1982, appellee again began experiencing discomfort. She visited appellant on November 20, 1982, and at that time he noted a possible fistula reforming and scheduled a follow up visit. Appellee did not keep this appointment. Appellee sought treatment from another physician and in early January, 1983, was operated on for a second rectovaginal fistula repair at Georgetown University Hospital. This repair effort also failed. After undergoing several other interim procedures and suffering a miscarriage in May of 1983, appellee was admitted to Georgetown University Hospital in June of 1983 for a final repair attempt which was successful.

At trial appellee called as her only expert witness Edward Cunningham, M.D., a board certified specialist in obstetrics and gynecology. Based upon his review of the records of Dr. Turgut's procedures in closing the fourth degree laceration suffered by appellee at childbirth and Dr. Turgut's later attempt to repair the rectovaginal fistula, he opined that Dr. Turgut's choice of suturing technique on both occasions did not comport with the standard of care expected of a competent practitioner of obstetrics and gynecology. Further, Dr. Cunningham testified that the suturing method employed in closing the fourth degree laceration caused the formation of the rectovaginal fistula and also was the cause of Dr. Turgut's failure to excise that fistula successfully in his subsequent operation upon appellee.

James Patterson, M.D., also a board certified obstetrician and gynecologist, testified for the defense. He offered a contrary expert opinion as to Dr. Turgut's choice of suturing technique in performing the two wound closings. He testified that the method selected by Dr. Turgut was one of several which could have been chosen and that the layering technique employed met the standard of care expected of a reasonably competent practitioner of obstetrics and gynecology. Dr. Patterson opined that the formation of the

---

of the rectum). A second layer was then performed which included the submucosal tissue. Lastly, the vaginal mucosa was closed.

rectovaginal fistula was unrelated to the suturing of the fourth degree laceration and that the same suturing technique which Dr. Turgut employed when attempting to excise that fistula was not the cause of the failure of that repair.

Thus, the issue of Dr. Turgut's negligence *vel non* which was submitted to the jury was a narrow one. Appellee's claim that Dr. Turgut was negligent was limited to her assertion that he had not exercised due care in selecting a suturing technique.

### Issue Presented

Before the jury was empaneled on the first day of trial, appellee filed a motion *in limine*. She sought, *inter alia*, to preclude Dr. Turgut from (1) testifying as an expert witness, and (2) testifying as to his past success rate in repairing fourth degree lacerations and rectovaginal fistulae. Appellee based her motion on the fact that Dr. Turgut had not, in answer to appellee's interrogatories, named himself as one of the expert witnesses that he would call at trial. The trial judge granted the motion.

As an initial response to appellant's contention that the court committed reversible error in limiting his testimony, appellee urges that the issue has not been preserved for our review. She points out that appellant never attempted at trial to introduce the evidence which was excluded by the court's ruling on the motion *in limine*. Consequently, she posits, the ruling on the motion is an insufficient basis for an appellate review. We disagree and explain.

In *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988), the Court of Appeals construed Rule 4–322 (which since July 1, 1988 has been renumbered 4–323),[4] governing the methods

---

4. Rule 4–322 (now 4–323) provides in pertinent part:
 **(a) Objections to Evidence.**—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own

of making objections at a criminal trial. In *Prout* defense counsel moved *in limine* to "advise the court" of his intention to cross-examine the prosecuting witness regarding her prior convictions of certain crimes. The trial judge, in response to that motion, ruled that the proffered convictions were not relevant to the credibility of the prosecuting witness and therefore inadmissible. At trial, defense counsel did not attempt to cross-examine the prosecuting witness concerning her prior convictions. When the defendant in appealing his conviction contended that the prior convictions of the prosecuting witness should have been admitted, the State argued that the issue had not been preserved for trial. The Court of Appeals, in agreeing with the defendant-appellant, reasoned:

> Whether a trial judge's ruling granting a motion *in limine* [5] may be reviewed on appeal when there is no subsequent proffer of the evidence at trial presents a question of first impression in this Court. Typically, a motion *in limine* is a motion made before or during a jury trial outside of the hearing of the jury, the purpose of which is to prevent the jury from hearing certain

---

initiative, so directs. The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled.

. . . .

(c) **Objections to Other Rulings or Orders.**—For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

5. In making its analysis, the Court of Appeals treated the ruling on defendant's motion *in limine* as granting a motion by the State to exclude evidence. *Prout, supra,* at 355, n. 4, 535 A.2d 445.

questions and statements that are allegedly prejudicial to the movant. Specifically, the motion usually seeks an order restricting opposing counsel from offering questionable evidence before the judge has had an opportunity to rule on its admissibility. Evidence is most often sought to be excluded because is is incompetent, irrelevant, immaterial, privileged, or otherwise inadmissible. *See generally McCormick on Evidence* § 52, at 128 (E. Cleary 3d ed. 1984). Thus, the real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably infect the fairness of the trial.

Obviously, the trial judge may either grant or deny the motion. If the trial judge admits the questionable evidence, the party who made the motion ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review. However, when the trial judge resolves these motions by clearly determining that the questionable evidence will *not* be admitted, and by instructing counsel not to proffer the evidence again during trial, the proponent of the evidence is left with nothing to do at trial but follow the court's instructions. Under these circumstances, the court's ruling controls the subsequent course of the trial and the proponent's objection is preserved for review without any further action on his part.

The State, however, insists that Maryland Rule 4–322(a) requires that a party make a subsequent proffer or objection when his evidence is excluded. Rule 4–322(a) provides that "[a]n objection to the *admission* of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise the objection is waived." As we see it, Rule 4–322(a) is inapplicable when a trial judge rules to exclude evidence. Moreover, subsection (c) of Rule 4–322 states that to preserve an objection to a "ruling or order" *other than one admitting evidence,* "it

is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." Thus, when a trial judge, in response to a motion *in limine*, makes a ruling to exclude evidence that is clearly intended to be the final word on the matter, and that will not be affected by the manner in which the evidence unfolds at trial, and the proponent of the evidence makes a contemporaneous objection, his objection ordinarily is preserved under Rule 4–322(c). (Footnotes omitted.)[6] (Emphasis in original.)

*Id.* at 355–57, 535 A.2d 445.

■ We believe the rationale of the *Prout* court is fully applicable to the situation presented in the instant case. Rule 2–517 which governs the method of making objections in civil cases is textually identical to Rule 4–322 (now 4–323).[7] *Id.* at 354 n. 1, 535 A.2d 445. When the court

---

**6.** In so holding, the Court of Appeals overruled our contrary conclusion in *Funkhouser v. State,* 51 Md.App. 16, 23–25 (1982).

**7.** Rule 2–517 provides in pertinent part:

(a) **Objections to Evidence.**—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled.

. . . . .

(c) **Objections to Other Rulings or Orders.**—For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportuni-

granted appellee's motion *in limine*, it effectively precluded appellant's counsel from eliciting his client's expert opinions on the medical issues before the jury notwithstanding the appellant's proffered competence to render such opinions. Therefore, we hold that under the circumstances presented in this case appellant's contentions have been preserved for our review.

The discovery of findings and opinions of experts who are expected to be called as witnesses at trial by an opposing party is governed by Rule 2–402, which in pertinent part provides:

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

**(a) Generally.**—A party may obtain discovery regarding any matter, not privileged, including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter, if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party....

**(e) Trial Preparation—Experts.—**

(1) *Expected to be Called at Trial.*—Discovery of findings and opinions of experts, otherwise discoverable under the provisions of section (a) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained without the showing required under section (c) of this Rule only as follows: (A) A party by interrogatories may require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the findings and the opinions to which the expert is expected to testify

---

ty to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

and a summary of the grounds for each opinion, and to produce any written report made by the expert concerning those findings and opinions; (B) a party may obtain further discovery, by deposition or otherwise, of the findings and opinions to which an expert is expected to testify at trial, including any written reports made by the expert concerning those findings and opinions.

Subsection (e)(1) of this Rule, which was adopted in 1984, substantially modified former Rule 400f.[8] The source of the modifications, reflected in the minutes of the discussions of the Court of Appeals Standing Committee on Rules of Practice and Procedure, was Rule 26(b)(4)[9] of the Federal Rules of Civil Procedure (FRCP). Consequently, we look to the federal decisions construing that rule for guidance on the proper interpretation of the language employed. *Bartell v. Bartell*, 278 Md. 12, 18, 357 A.2d 343 (1976). FRCP 26(b)(4) has been uniformly interpreted as being inapplicable to persons who were actors in or viewers of the incidents which give rise to the action before the court. *Levingston v. Allis–Chalmers Corp.*, 109 F.R.D. 546, 550 (S.D.Miss.,

---

**8.** Rule 400f stated:

 f. *Information From Experts Who are Expected to Testify at Trial.* A party may obtain by written interrogatory or by deposition without the showing required under section d of this Rule, a written report concerning the action or its subject matter made by an expert who is expected to testify at the trial whether or not such report was obtained in anticipation of trial or in preparation for litigation. If such expert has not made a written report, he may be examined upon written questions or by oral deposition as to his findings and opinions.

**9.** Rule 26(b)(4) in pertinent part reads:

 (4) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

 (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion....

1985); *Baran v. Presbyterian University Hospital,* 102 F.R.D. 272, 273–74 (W.D.Pa., 1984); *Nelco Corp. v. Slater Electric, Inc.,* 80 F.R.D. 411, 414 (E.D.N.Y., 1978); *Congrove v. St. Louis S.F.R., Co.,* 77 F.R.D. 503, 504–05 (W.D. Mo., 1978); *Norfin, Inc. v. International Business Machines Corp.,* 74 F.R.D. 529 (D.C.Colo., 1977); *Rodrigues v. Hrinda,* 56 F.R.D. 11, 12 (W.D.Pa., 1972). Rules applicable in other jurisdictions based upon FRCP 26(b)(4) have similarly been construed. *Neal by Neal v. Lu,* 530 A.2d 103, 106–08 (Pa.Super., 1987); *Adkins v. Morton,* 494 A.2d 652, 656–58 (D.C.App., 1985). *See generally,* 10 Fed.Proc., L.Ed. § 26:123 (1988); 4 J. Moore, J. Lucas and G. Grotheer, *Moore's Federal Practice* § 26.66[2] (2d ed. 1984); 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2033 (1970, 1988 Supp.); Annot., 33 A.L.R.Fed. 403, 431–32 (1977). The rationale for this construction is the phrase in the rule limiting the scope of the discoverable expert opinion to that "acquired or developed in anticipation of litigation or for trial." The expert opinion of an "actor or viewer" is not so acquired or developed. Thus, in a malpractice action a party whose alleged negligence is the subject of the complaint need not list himself or herself as an expert in response to a FRCP 26(b)(4) interrogatory in order to enable that party to express expert opinion on whether the conduct in question was in accordance with the recognized standard of care. *Neal by Neal v. Lu, supra,* at 108; *Rodrigues v. Hrinda, supra,* at 12.

Because of the deliberate reliance upon FRCP 26(b)(4) in the framing of Rule 2–402(e)(1), we hold that it should receive the same construction. Although trial judges, who are primarily called upon to administer the discovery rules, are vested with reasonable discretion in applying them, *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768 (1961), we hold that the court in the instant case abused that discretion in excluding the appellant's expert testimony. Appellant's opinion as to why he selected the suturing technique which he employed on appellee was not one which was acquired or developed in anticipation of

litigation or for trial. Hence, appellant was not required to list himself as an expert who was expected to be called as a witness at trial in response to appellee's Rule 2–402(e)(1) interrogatory.

 Finally, we reject appellee's assertion that the error, if any, in excluding appellant's expert testimony was harmless error. *Harris v. Harris*, 310 Md. 310, 319, 529 A.2d 356 (1987). The appellant's professional judgment was at issue in the instant case. Nevertheless, he was not allowed to testify as to why he chose a layered suturing technique as opposed to other methods. He was not permitted to give his opinion of the applicable standard of care based on his experience and to buttress that opinion with evidence of his past success/failure rate when employing that technique. For that limited purpose his experience in employing the technique was admissible. His expert testimony was highly relevant to the narrow issue before the jury. *Cf. State, Use of Miles v. Brainin*, 224 Md. 156, 159–62, 167 A.2d 117 (1961). The exclusion of that testimony prejudiced his defense.

JUDGMENT REVERSED;

CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL.

COSTS TO BE PAID BY THE APPELLEE.