614 A.2d 1021

Victor R. HREHOROVICH, M.D.

v.

HARBOR HOSPITAL CENTER, INC., et al.

No. 105, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Oct. 30, 1992.

774

Steven M. Nemeroff (Wortman, Nemeroff & Bulitt, on the brief), College Park, for appellant.

R. Dennis Osterman (Richard G. Vernon and Thomas A. Lerner, on the brief), Bethesda, for appellees.

Before BLOOM, ROSALYN B. BELL and HARRELL, JJ.

HARRELL, Judge.

This case arises from a dispute between appellant, Victor R. Hrehorovich, M.D., and his employer, appellee Harbor Hospital Center, Inc. L. Barney Johnson, the President and Chief Executive Officer of the Hospital, is also an appellee in this case. After appellees discharged appellant from his position as Director of the Department of Medicine, appellant asserted several causes of action against them. The Circuit Court for Baltimore City (Noel, J.) granted appellees' motion to dismiss the entire complaint and denied appellant's subsequent motion to alter or amend the judgment. This appeal followed.

## *Facts*

Appellee Harbor Hospital Center, Inc. (the Hospital) manages and operates a hospital in Baltimore under the direction of its Board of Trustees. Appellee L. Barney Johnson is the President and Chief Executive Officer of the

Hospital and is charged with implementing the decisions of the Board of Trustees and overseeing the daily operations of the Hospital.

Appellant, Victor R. Hrehorovich, M.D., 52, is licensed to practice medicine in Maryland. Since 1976, appellant has been a member of the Hospital's Medical Staff, which is an organization made up of physicians who practice at the Hospital.[1] The Medical Staff is an entity separate from the Hospital and has its own by-laws, though these by-laws operate to a large extent in conjunction with the Hospital's by-laws.

From 1976 until 1991, appellant was also employed as the Director of the Department of Medicine. His duties as Director were administrative in nature; he was responsible for the professional and administrative activities within the department and for developing the department's own rules and regulations.

In February 1991, appellant, who was also serving as Chairman of the Medical Staff at the time, communicated to appellees the Staff's concerns about what the Staff considered to be the Hospital's financial and administrative problems. The areas of concern included: appellees' refusal actively to pursue certain goals of a previously expressed strategic plan; reductions in the hospital work force, especially in the number of nurses; delays in X-ray and laboratory reporting; and the lack of effective mechanisms for communication between the Hospital and the Staff.

On 3 April 1991, the Advisory Committee to the Medical Executive Committee[2] voted to hold a special meeting of the Medical Staff for the purpose of considering a vote of

---

[1]. Because nothing in the record indicates that appellant no longer has staff privileges at the Hospital, we assume that he remained an active Staff Member even after he was discharged from his position as Director in 1991.

[2]. The Medical Executive Committee is comprised of members of the Medical Staff. At the time of these events, appellant served as Chairman of the Medical Executive Committee.

"No Confidence" with regard to appellee Johnson. Such a vote could have led to Johnson's dismissal. The meeting was scheduled for 18 April 1991. On 13 April 1991, appellees attempted to dissuade the Medical Staff from taking a "No Confidence" vote.

On 17 April 1991, appellees terminated appellant's employment as Director of the Department of Medicine. Appellant was not given any advance notice of his dismissal. His subsequent attempts to ascertain the precise grounds for his termination were unsuccessful. Since the time of appellant's discharge as Director, his privileges at the Hospital, his membership on the Medical Staff, and his positions as Chairman of the Medical Staff and Chairman of the Medical Executive Committee have remained unaffected.

We will include additional facts as necessary in our discussion of the issues presented.

### Proceedings Below

After unsuccessful attempts to gain relief through hospital administrative procedures, appellant filed a complaint in the Circuit Court for Baltimore City, asserting causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, wrongful discharge, negligence, and intentional infliction of emotional distress. Pursuant to Maryland Rule 2–322(b)(2), appellees moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Appellant filed an opposition to the motion to dismiss, and appellees followed with a reply memorandum of their own.

On 5 November 1991, the circuit court dismissed appellant's complaint. Appellant timely filed a motion to alter or amend the judgment, pursuant to Rule 2–534. After the parties again exchanged opposition and reply memoranda, the circuit court denied appellant's motion. The circuit court did not issue an opinion with either of its rulings.

*Issues*

On appeal, appellant has posed several questions. We have consolidated and restated these questions. The first issue is a procedural one:

I. Whether the lower court erred in considering matters outside the complaint in deciding appellees' motion to dismiss for failure to state a claim upon which relief can be granted.

The remaining questions ask whether the lower court erred in granting appellees' motion to dismiss for failure to state a claim upon which relief can be granted as to each of appellant's causes of action. Our disposition of the first issue, however, affects the nature of these remaining issues. Because we conclude that, by its actions, the circuit court impliedly and necessarily transmuted the motion to dismiss into a motion for summary judgment, we treat the lower court's decision as a grant of summary judgment and will review the decision in that light. Accordingly, we combine and rephrase the remaining issues for discussion as follows:

II. Whether the lower court erred in granting summary judgment on each count of appellant's complaint.

After explaining our decision on the first issue, we will discuss the appropriateness of summary judgment for each cause of action separately.

*Discussion*

## I. MOTION TO DISMISS

In his complaint, appellant referred to and relied on certain provisions of the Medical Staff By-laws and the Hospital's Employee Policy Manual (EPM) and alleged that these provisions constituted an enforceable contract of employment between appellant and the Hospital as to the position of Director of the Department of Medicine. In their motion to dismiss, appellees set forth certain other provisions of the Medical Staff By-laws and the EPM that were not referred to by appellant, and some provisions of

the Hospital's By-laws. Using these facts, they argued that neither the Medical Staff By-laws nor the EPM could serve as a basis for finding that a contract existed between appellant and the Hospital.

Appellant responded in his opposition memorandum that on a motion to dismiss the court should not consider any new allegations of fact by appellees. But appellant added that "even if the Court goes beyond the pleadings, the facts in this case and the law in the State of Maryland will require the Court" to conclude that the complaint sufficiently states causes of action.

Now, on appeal, appellant claims that for the circuit court to have granted the motion to dismiss, it must have considered the facts set forth by appellees that went beyond appellant's complaint. Because such consideration is not proper for a motion to dismiss, appellant argues, the trial court's decision must be reversed. Appellees, on the other hand, maintain that the trial court could properly examine the documents that form the basis for appellant's complaint "to determine whether those documents, on their face, defeat Appellant's claim as a matter of law." According to appellees, a trial court should not have to decide a case based upon "a view of the tip of the iceberg." In essence, appellees argue that they had the right to "complete" the pleading by providing additional portions of the documents relied on by appellant. This "right," they assert, is similar to the evidentiary "rule of completeness" that permits a party to introduce the remainder of a written or oral statement that the opposing party has introduced into evidence, usually for impeachment purposes.[3]

In its Order, the circuit court granted appellees' motion to dismiss after "having considered the Complaint, the submissions of counsel, and being otherwise fully advised[.]" As stated earlier, the court did not issue an opinion with its order.

---

**3.** *See* Md. Rule 2–419(b); *Newman v. State,* 65 Md.App. 85, 95, 499 A.2d 492 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986).

For reasons we shall explain, we conclude that the trial court's consideration of documents outside the complaint was proper, and that its ruling was in fact a grant of summary judgment. Despite the lack of an opinion by the circuit court explaining its decision, we think that the court treated the motion to dismiss as a motion for summary judgment and determined that appellees were entitled to judgment as a matter of law on all counts.

■ Appellees have not cited any authority for their position that a defendant must be able to "complete" a pleading that has not set forth all pertinent portions of the documents attached to or referenced by the pleading. Indeed, no such rule exists in Maryland.[4] Nevertheless, we find that the trial court's obvious consideration of the additional portions of the documents supplied by appellees in this case was proper under Maryland Rule 2–322(c).

In considering a motion to dismiss for failure to state a claim under Rule 2–322(b)(2), a court must assume the truth of all well pleaded facts and all inferences that can be reasonably drawn from those pleadings. *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 768, 511 A.2d 492 (1986). Rule 2–322(b)(2), of course, serves the same function as the demurrer under former Rules 345 and 371 b. When a defendant demurred under those rules, a court was not permitted to consider additional facts not plead by the plaintiff, especially facts set forth by the defendant in the demurrer. *See, e.g., Beach v. Mueller*, 32 Md.App. 219, 224, 359 A.2d 232 (1976). A demurrer in which the defendant alleged new facts was known as a "speaking demurrer." *Id.* n. 2.

---

**4.** Some states recognize an exception to the prohibition against considering materials not contained in the complaint when deciding a motion to dismiss or a demurrer. When a plaintiff bases the cause of action on a written agreement, the defendant may attach the agreement to a demurrer for consideration by the trial court. *See, e.g., Martin v. Dep't of Transp.*, 124 Pa.Cmwlth. 625, 556 A.2d 969, 971 (1989).

The same general principle applies to the motion to dismiss under modern rules. The revision of the Maryland Rules of Procedure, however, effected a significant change in this area of the law. The last sentence of Rule 2–322(c) provides:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

Thus, the rule permits a "speaking demurrer"—the moving party may go beyond the facts of the complaint and set forth exhibits and other facts to support the argument for dismissal. *See* Paul V. Niemeyer & Linda M. Richards, *Maryland Rules Commentary* 149 (1984). In our view, the language "and not excluded by the court," which refers to the matters outside the pleadings, gives the trial court the discretion to consider such matters. The trial court's decision here will dictate how it must analyze the motion. If the court excludes the extraneous materials, then it must decide the motion based on the legal sufficiency of the pleading. If the court does not exclude the outside matters, however, the rule mandates that "the motion *shall* be treated as one for summary judgment...." (Emphasis added).

This Court has addressed this question in previous cases. In *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987), the plaintiff brought an action for breach of an alleged employment contract. The defendant moved to dismiss the action or, in the alternative, to grant summary judgment. *Castiglione*, 69 Md.App. at 328, 517 A.2d 786. We cited the above provision of Rule 2–322 and concluded that because the trial court based its decision to grant the defendant's motion on an exhibit that was attached to the

defendant's supporting memorandum, we would treat the court's decision as a grant of summary judgment. *Id.* at 332, 517 A.2d 786.

Similarly, in *Haselrig v. Public Storage, Inc.*, 86 Md.App. 116, 585 A.2d 294 (1991), the plaintiff sued his employer for wrongful discharge. The employer moved to dismiss the complaint, or alternatively, for summary judgment, alleging that disclaimers in an employee handbook, which were not pleaded by the plaintiff, precluded the existence of an implied or express employment contract. *Haselrig*, 86 Md. App. at 120, 585 A.2d 294. The trial court dismissed the plaintiff's complaint, ruling that "the Complaint ... fail[ed] to state a claim upon which relief can be granted...." Citing *Castiglione*, we determined that despite the language of the court's order, the ruling was on the motion for summary judgment, not the motion to dismiss. *Id.* at 118 n. 1, 585 A.2d 294.

In the case *sub judice*, despite the absence of an express indication of how the trial judge treated the case, we hold that the lower court transmuted appellees' motion to dismiss to a motion for summary judgment. This was not accomplished through alchemy, but by virtue of what the trial court must have considered in reaching the disposition it did. The order stated that the court considered the "submissions of counsel." Also, the court did not give any indication that appellees' references to facts not plead by appellant were improper or excludable. In fact, before deciding the motion, the trial judge accepted an opposition to the motion to dismiss filed by appellant and a reply to that opposition from appellees, both of which contained even more references to the "matters outside the pleadings."

Unlike the appellees in *Castiglione* and *Haselrig*, appellees in the instant case did not request alternative relief; that is, their motion was titled "Motion to Dismiss" and not "Motion to Dismiss, or in the Alternative, for Summary Judgment." The additional language may have been a

factor in the earlier decisions. But we do not believe that the different title of the motion in this case should lead to a different result. The last sentence of Rule 2–322(c) applies to "a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted." We think that language refers to *any* motion to dismiss, whether standing alone or with an alternative motion for summary judgment. Nothing in the language of the rule suggests that the application of the rule is triggered only by a motion with "Summary Judgment" in the title.

Although we decide in the instant case that the title of the motion at issue is not a critical factor, we suggest to future defendants that they be more clear and precise than appellees here in requesting relief from the court. A motion to dismiss for failure to state a cause of action is a different animal from a motion for summary judgment. When moving to dismiss, a defendant is arguing that even if the pleaded facts are true, the plaintiff is not entitled to recover under the law. There should be no need to refer to matters that are not in the complaint. The prudent defendant who wants the court to consider extraneous matters will not file a simple motion to dismiss and hope that the trial judge exercises the discretion given by Rule 2–322(c), but rather will style the motion as an alternative one and ask the court to grant relief on either of two grounds: failure to state a claim and summary judgment. When the court considers the motion to dismiss, it should consider only the sufficiency of the pleading. If the trial judge determines that the complaint does state a claim upon which relief can be granted, then he can consider the outside matters and decide whether the defendant is entitled to summary judgment.

In addition, we caution trial courts that failure to articulate clearly the nature of its ruling in these circumstances is risky business. Just as a defendant should specify what relief is sought, so should a trial court specify what relief is given. As stated above, Rule 2–322(c) gives the trial court discretion to convert a motion to dismiss to a

motion for summary judgment by considering matters out-
side the pleading. When a judge exercises that discretion,
however, best management practice indicates he should
either (1) issue an oral or written opinion indicating that he
has considered extraneous information and is deciding the
motion on a summary judgment basis, or (2) put appropriate
language in the order granting or denying relief that indi-
cates that he has transmuted the motion to one for sum-
mary judgment. Specifying the precise relief given and the
grounds therefor is important for the purpose of appellate
review. When reviewing the grant of either a motion to
dismiss or a motion for summary judgment, an appellate
court must determine whether the trial court was legally
correct. But this determination depends on the nature of
the relief given. The grant of a motion to dismiss is proper
if the complaint does not disclose, on its face, a legally
sufficient cause of action. *Bramble v. Thompson,* 264 Md.
518, 520, 287 A.2d 265 (1972). On the other hand, the grant
of a motion for summary judgment is proper only if there is
no genuine dispute of any material fact and the movant is
entitled to judgment as a matter of law. *Brady v. Ralph
Parsons Co.,* 308 Md. 486, 495, 520 A.2d 717 (1987). In
addition, if the lower court's basis for granting summary
judgment was erroneous, the appellate court will not ordi-
narily seek to affirm the judgment by ruling on another
ground that was not ruled upon by the lower court, if that
other ground is one as to which the trial court had discre-
tion to deny summary judgment. *See Orkin v. Holy Cross
Hosp. of Silver Spring, Inc.,* 318 Md. 429, 435, 569 A.2d 207
(1990). The importance to appellate courts of a trial court
clearly articulating what action it is taking cannot be over-
emphasized.

■ Appellant further complains that the trial court's
action of transmuting the motion to dismiss into a motion
for summary judgment was improper because the court did
not adequately notify the parties of its intention to consider
appellees' extraneous materials. Appellant argues that if
he had known that the trial court would use the appellees'

supplemental allegations of fact in deciding the motion to dismiss, he would have presented to the court his "evidence, testimony and documents" that refute appellees' arguments. In our view, however, the record is clear that appellant was sufficiently aware of the trial court's ability to consider the motion as one for summary judgment, and appellant cannot now claim that the trial court's action was improper.

We do not consider it unreasonable to assume that appellant knows the law, including the Maryland Rules of Procedure. From its unambiguous language, Rule 2–322(c), on its face, informs the appellant that a trial court may transmute a motion to dismiss into a motion for summary judgment. We find further support for our conclusion in this record in that the trial judge did not immediately exclude the outside matters referred to by appellees, and that the court even accepted another exchange of documents by the parties before rendering its decision. From this action, we, as well as appellant, can reasonably infer that the lower court might be considering the additional information. Additionally, in appellant's opposition to the motion to dismiss, he stated that "even if the Court goes beyond the pleadings, the facts in this case and the law in the State of Maryland will require the Court" to deny the motion. We read this argument to say that "even if the court does consider the extra information provided by the Hospital, the court must still find in favor of Dr. Hrehorovich." Thus, appellant was arguing to the trial court that it should rule in his favor even under a summary judgment test. In light of these circumstances and the authority of Rule 2–322(c), we hold that appellant was aware, at least implicitly, that the lower court could exercise its discretion under Rule 2–322(c), and that he had sufficient opportunity to present additional matters.

This conclusion is further buttressed by the federal decisions that have interpreted Fed.R.Civ.P. 12(b)(6), from which Md. Rule 2–322(b) is partially derived.[5] Generally,

---

5. Fed.R.Civ.P. 12(b) states, in pertinent part:

federal litigants are entitled to be expressly notified of a
district court's intention to convert a Rule 12(b)(6) motion
into a motion for summary judgment. 6 James W. Moore et
al., Moore's Federal Practice ¶ 56.14[1] (2d ed. 1988). Fed-
eral courts have recognized, however, that in certain cir-
cumstances, express notice is not necessary. In these
cases, the failure to expressly notify the parties of the
court's intention was harmless error if, for example, the
complaining party knew of the extraneous materials, had an
opportunity to respond to them, and had not refuted their
accuracy. *See Kaestel v. Lockhart,* 746 F.2d 1323, 1324
(8th Cir.1984). In *Moody v. Town of Weymouth,* 805 F.2d
30 (1st Cir.1986), the defendants submitted an affidavit and
other documents in support of their Rule 12(b)(6) motion to
dismiss. The district court did not issue a ruling until
almost a year later, when it granted the motion. During
that time, the plaintiff never filed his own affidavit or other
materials to dispute the accuracy of the defendants' asser-
tions. *Moody,* 805 F.2d at 31. Instead, the plaintiff moved
to strike the defendants' materials. The district court im-
plicitly denied this motion when it relied on the defendants'
materials in granting the motion to dismiss. *Id.* The First

---

... [T]he following defenses may at the option of the pleader be
made by motion: ... (6) failure to state a claim upon which relief
can be granted.... If, on a motion asserting the defense numbered
(6) to dismiss for failure of the pleading to state a claim upon which
relief can be granted, matters outside the pleading are presented to
and not excluded by the court, the motion shall be treated as one
for summary judgment and disposed of as provided in Rule 56, and
all parties shall be given reasonable opportunity to present all
materials made pertinent to such a motion by Rule 56.

Many of Maryland's rules of procedure are derived from, or are
similar to, the federal rules of procedure. Consequently, Maryland
courts have frequently stated that when a local rule and a federal rule
are similar, federal court decisions interpreting the federal rule are
especially persuasive authority in interpreting the local rule. *See, e.g.,
Estep v. Georgetown Leather Design,* 320 Md. 277, 284, 577 A.2d 78, 81
(1990) (judgments not disposing of entire action); *Metropolitan Mort-
gage Fund, Inc. v. Basiliko,* 288 Md. 25, 27, 415 A.2d 582, 583 (1980)
(summary judgment); *Turgut v. Levine,* 79 Md.App. 279, 289, 556 A.2d
720, 725 (1989) (discovery); *Pollokoff v. Maryland Nat'l Capital Bank,*
44 Md.App. 188, 192, 407 A.2d 799, 801 (1979) (class actions).

Circuit rejected the plaintiff's claim that the district court committed reversible error when it failed to expressly notify the parties of its conversion of the motion to a motion for summary judgment. According to the court, "[t]he plain language of Rule 12(b)(6) that materials outside the pleading may be considered if not excluded by the court put plaintiff on notice that the motion might be converted into one for summary judgment." *Id.* The court also observed that the plaintiff never disputed the accuracy of the defendants' materials and did not show that he would have done anything different if the district court had provided express notice of the conversion. *Id.* We believe this pragmatic approach of the federal courts is sensible and provides additional support for our holding.

In the instant case it appears that appellant did not present any additional information because he could not do so. Our review of the record convinces us that there was no additional information for appellant to use to support his arguments. His complaint relied almost exclusively on the alleged existence of a contract between him and the Hospital. The only documents necessary to resolve the issue of whether a contract existed were the Medical Staff By-laws, the Hospital By-laws, and the EPM, all of which were before the court. Appellant has, in his complaint and response to the motion to dismiss, conceded the existence of these documents and the various language highlighted therefrom by the parties. *See Castiglione*, 69 Md.App. at 334–37, 517 A.2d 786. Appellant has not brought to our attention any specific additional information that he possessed and that would have been appropriate for summary judgment consideration.[6] The trial court could properly dispose of the case on summary judgment.

---

6. In his brief, appellant refers several times to the affidavit of Carl Behm, who was President and CEO of the Hospital when appellant began employment in 1976. Appellant apparently secured the affidavit to rebut appellees' claim that no contract existed and thus create a factual dispute.

By holding that appellant was sufficiently aware of the trial court's ability to exercise discretion under Rule 2-322(c), we are not saying that the lower court's conduct in this case would be ideal or desirable in all situations where that rule comes into play. There can be no hard and fast rule in applying Rule 2-322(c); each case must be evaluated separately. Trial judges should recognize that there may be circumstances in which the better practice would be expressly to notify the parties that the court is going to treat a motion to dismiss as one for summary judgment, and act accordingly.

In sum, in the absence of any authority for the trial court to consider "completed" documents on a motion to dismiss, we find that the trial court, under Rule 2-322(c), could, and did, transmute the motion to dismiss to a motion for summary judgment, even absent a styling of the motion as one in the alternative for summary judgment, and that it properly did so. We now turn to each count of the complaint to decide whether summary judgment was appropriate.

## II. MERITS OF THE CASE

■ The standard for appellate review of a trial court's grant of a motion for summary judgment is whether the court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). Summary judgment is appropriate only where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2-501; *Brady v. Ralph Parsons Co.*, 308 Md. 486, 495, 520 A.2d

---

We note, however, that the affidavit is dated 18 December 1991, nearly three months after appellant filed his opposition to the motion to dismiss, and two weeks after he noted his appeal to this Court. The affidavit was not available for the trial court's consideration of the motion for summary judgment.

Appellant put the affidavit, along with another document, into the appendix at the end of his brief. These documents, however, are not part of the Record that is before this Court. For that reason, we have granted appellees' motion to strike appellant's appendix and the portions of his brief that refer to these documents.

717 (1987). In determining whether a factual dispute exists, all inferences should be drawn in the light most favorable to the non-moving party. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985).

## A. *Breach of Contract*

■ Appellant's principal contention is that appellees' termination of his position as Director of the Department of Medicine constituted a breach of the employment contracts created by the Medical Staff By-laws and the EPM. We will address each of these alleged sources of contractual obligation in turn, but first we observe that there is no indication that appellant and the Hospital entered into an express employment contract for a definite term. In the absence of a such a contract, appellant was, as a matter of law, an at-will employee. In Maryland, at-will employment is a contract of indefinite duration that can be terminated at the pleasure of either party at any time. *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 303, 596 A.2d 1069 (1991); *Adler v. American Standard Corp.,* 291 Md. 31, 35, 432 A.2d 464 (1981).

### 1. The Medical Staff By-laws

The Medical Staff is an organization of licensed physicians practicing at the Hospital for the purpose of monitoring medical care. The By-laws of the Medical Staff regulate the composition, conduct, and operation of the Medical Staff. They address such areas as membership, clinical departments, qualifications and privileges, officers and committees, and appeals. Most significantly, they set forth the privileges associated with being a member of the Hospital's Medical Staff.

According to appellant, the By-laws create a legally enforceable contract between the Medical Staff (and each of its members) and the Hospital. Appellant contends that they require the concurrence of the Staff before the Hospital may dismiss a director of a department, including the Director of the Department of Medicine. He further ar-

gues that the By-laws set forth the conditions and procedures for such a dismissal, and the "due process" that must be afforded when there is a dismissal. The due process includes notice, a statement of the grounds for the decision, and a hearing. Because he was discharged without being afforded these procedures, appellant argues, appellees are liable for breach of contract. We do not agree.

On their face, the appeals and "due process" provisions of the By-laws do not apply to employment termination. Article X, Section 2 provides:

> In the event that application for privileges is denied or a physician's privileges are revoked, curtailed, or limited, the physician concerned may appeal such an action....

The language is clear and unambiguous. The By-laws protect the privileges that come with being a Medical Staff member, and nothing more.

Throughout this litigation, appellant has confused his status as a member of the Medical Staff with his employment as director of a clinical department, a position that is administrative in nature. The two are distinct. One can be a member of the Staff without being a department director. As noted earlier, appellant's status as a Staff member has remained unaffected.[7] Because only his position as an administrative employee of the Hospital, not his Staff privileges, was terminated, the Hospital was not required to follow the "due process" provisions of the Medical Staff By-laws. To the extent that these provisions afford "due process," they apply only to the termination of Hospital privileges, not to termination of employment by the Hospital.

Moreover, the Hospital has the right to terminate its at-will employees at its pleasure. When the Medical Staff

---

7. Article V, Section 3(c)(6) of the Medical Staff By-laws provides: The resignation or dismissal of a Director of a department from his duties as Director under the circumstances as set forth above does not include the loss of Active Staff membership or loss of Hospital privileges.

By-laws and Hospital By-laws are read together, it is clear that the Medical Staff may recommend appointments and terminations of staff members and department directors, but the ultimate decision-making authority for these actions lies with the Hospital's Board of Trustees.

Article V, Section 3(c)(4) of the Medical Staff By-laws describes the term of office of Directors of Major Departments:

Following a trial period of two (2) years, satisfactory to the Medical Executive Committee and the Board of Trustees, a duly appointed director of a major department shall, with the approval of the Board of Trustees and the Medical Executive Committee, be eligible to continue in office until age sixty-five (65). Thereafter, with the consent of the Medical Executive Committee, and the Board of Trustees, he may continue on an annual appointment basis beyond the age of sixty-five (65).

We reject appellant's assertion that this provision gives Directors "tenure" from the time the trial period ends until age 65. The only reasonable interpretation of the language is that a Director who survives the two-year trial period may continue only with, and subject to, the approval of the Board of Trustees.

The Hospital By-laws are consistent with the above section of the Medical Staff By-laws. Article IV, Section 1(E) of the Hospital By-laws states:

The Board is further authorized and empowered to remove the Chief of Staff, Director of any Department, the Chief of any subdivision thereof, or any other member of the Medical Staff serving in a medico-administrative position, at any annual, regular or special meeting....

Indeed, in his brief, appellant concedes that appellees have the power and authority to remove him as Director. He claims, however, that the Medical Staff By-laws provide the required means and manner for doing so. We have already rejected that assertion.

## 2. The Employee Policy Manual

Appellant's other basis for an implied contractual obligation is the Employee Policy Manual given to the Hospital's employees. Relying on *Haselrig v. Public Storage, Inc.,* 86 Md.App. 116, 585 A.2d 294 (1991), appellant contends that he reasonably relied on the provisions of the EPM, specifically the policies regarding termination of employment, when accepting the position, and that this reliance, together with the EPM itself, created an implied contract. It follows, argues appellant, that he has a cause of action for breach of contract, according to *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 596 A.2d 1069 (1991). In our view, the EPM is no basis for a contract in this case.

■■ In Maryland, an at-will employee may maintain an action for breach of an implied employment contract if existing general personnel policies or procedures limit the employer's discretion to terminate an employee. *Haselrig v. Public Storage, Inc.,* 86 Md.App. 116, 585 A.2d 294 (1991). In *Fournier v. USF & G,* 82 Md.App. 31, 569 A.2d 1299, *cert. denied,* 319 Md. 581, 573 A.2d 1337 (1990), we stated:

> [W]hen an employer communicates personnel policy statements to its employees which "... limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment ...", such statements, if justifiably relied on by its employee, may "... become contractual undertakings by the employer that are enforceable by its employee."

82 Md.App. at 37, 569 A.2d 1299 (quoting *Staggs v. Blue Cross of Md., Inc.,* 61 Md.App. 381, 392, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985)). Such personnel policies may give rise to contractual rights if they are properly expressed and communicated to the employee in a fashion that creates a reasonable basis for the employee's reliance on the provisions.

The introductory section of the EPM contains the following language:

## DISTRIBUTION OF THIS MANUAL

\* \* \* \* \* \*

This manual does not constitute an express or implied employment contract and nothing in the manual is intended to bind Harbor Hospital Center contractually. Each employee's employment is terminable at will, so that both the Hospital and each employee remain free to choose to end their work relationship.

## RESPONSIBILITY OF MANAGEMENT

All managerial and administrative functions, responsibilities, and prerogatives entrusted to and conferred upon employers inherently and by law are retained and vested exclusively with the Hospital. These include, but are not limited to, the right to exercise our judgment to establish, administer, and change wages, benefits, policies, practices, and procedures, to direct and discipline our work force, and to take whatever action is necessary in the Hospital's judgment to operate.

Appellant argues that he justifiably relied on the EPM's provisions, and consequently, under *Haselrig*, dismissal of his case was inappropriate. We believe, however, that *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987), not *Haselrig*, controls in the instant case. In *Castiglione*, we held that reliance on expressed personnel policies and procedures is precluded where those same policies clearly and effectively disclaimed any contractual intent. *Castiglione*, 69 Md.App. at 339–41, 517 A.2d 786. We found that the policy manual's disclaimer language did not evidence any intent to limit the discretion of the employer to discharge only for cause. *Id.* at 339–40, 517 A.2d 786.

The language in the relevant portions of the EPM in the case *sub judice* is nearly identical to the language in the manual in *Castiglione.* The language at issue there was:

Finally, this handbook does not constitute an express or implied contract. The employee may separate from his/ her employment at any time; the Hospital reserves the right to do the same.

The manual in *Castiglione* also contained a "Responsibility of Management" provision identical to the one quoted above.

 Here, as in *Castiglione,* the Hospital "expressly negated, in a clear and conspicuous manner, any contract based upon the handbook for a definite term and reserved the right to discharge its employees at any time." *Id.* at 340, 517 A.2d 786. The language expressly disclaims intent to enter into an employment contract for a definite term.

*Haselrig,* relied on by appellant, is distinguishable. Unlike *Castiglione,* the employee manual in *Haselrig* did not attempt "to disclaim the employer's intention to limit the contractual relationship, *i.e.* to foreclose any expectation on the part of the employer." *Haselrig,* 86 Md.App. at 129, 585 A.2d 294. Moreover, because of the ambiguity of the language of the alleged disclaimer and its location buried within the manual, this Court undertook to review the entire employee handbook to determine whether the employer intended to limit its discretion. *Id.* at 129–32, 585 A.2d 294. In this case, no such comprehensive review is required because the intent not to limit the Hospital's discretion—or, put another way, the lack of contractual intent to limit this discretion—is clear.

B. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Appellant also seeks recovery for appellees' breach of implied covenant of good faith and fair dealing. He claims that the implied covenant is found in the contract between the Medical Staff and appellees. He also claims that appel-

lees breached this covenant when they terminated appellant for the malicious purpose of "thwarting his attempt to improve the quality of care in the Hospital and in retaliation for the Medical Staff's attempt to exercise a 'No Confidence' vote in the Appellee Johnson...."

■■■ Maryland recognizes the existence of an implied covenant of good faith and fair dealing in certain contracts. *See, e.g., Julian v. Christopher*, 320 Md. 1, 9, 575 A.2d 735 (1990) (lease); *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534–36, 200 A.2d 166 (1964) (same). But "there is no implied covenant of fair dealing with regard to termination by either side in an employment-at-will." *Suburban Hosp., Inc. v. Dwiggins*, 324 Md. 294, 309, 596 A.2d 1069 (1991). Thus, the existence of an implied covenant of good faith and fair dealing is dependent on the existence of an employment contract with a definite term. Because there is no genuine dispute that appellant was an at-will employee, we find that there was no implied covenant in this case. Accordingly, there can be no breach of such a covenant, and appellees are entitled to judgment as a matter of law.

C. *Wrongful Discharge*

■■■ Appellant contends that his discharge by appellees directly violated a well-established Maryland public policy, and thus constitutes a wrongful discharge. He claims that his termination from his administrative position was contrary to the established public policy, set forth in Md. Health–Gen.Code Ann. § 19–102(a)(1) (1990), of promoting a health care system that provides all citizens with financial and geographic access to quality health care. We hold, however, that under Maryland law, appellees' discharge of appellant was not wrongful.

In *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), the Court of Appeals recognized for the first time a cause of action for wrongful discharge as an exception to the general rule that an at-will employment contract may be terminated at any time and for any reason.

The Court stated that an at-will employee may recover damages if the discharge "contravened some clear mandate of public policy." *Id.* at 43, 432 A.2d 464. Such a mandate may come in several forms, including constitutional provisions, legislative enactments, judicial decisions, or administrative regulations. *Id.* at 45–46, 432 A.2d 464.

According to appellant, his termination was a response in part to his "attempt to improve the quality of health care at the Hospital" and to "expose improper and unreasonable administrative practices." Appellant cites a Maryland statute as the source of the public policy that he claims was violated when he was discharged, but we believe that his reliance on that legislation is misplaced. Section 19–102 of the Health–General Article provides, in pertinent part:

> (a) *Findings.*—(1) The General Assembly finds that it is a priority of this State to promote the development of a health care system that provides, for all citizens, financial and geographic access to quality health care at a reasonable cost.

In our view, these findings by the General Assembly do not constitute the type of "clear mandate of public policy" contemplated by the *Adler* decision. The requirement of a clear statutory expression of public policy was most recently highlighted by this Court in *Lee v. Denro, Inc.,* 91 Md.App. 822, 836–37, 605 A.2d 1017 (1992). In *Lee,* the employee was discharged after she protested deviations from proper testing procedures where the apparent reason for the deviations was to deceive an FAA inspector. She alleged that her termination contravened a federal public policy of "promotion of maximum achievable safety in air transportation." *Id.* at 827, 605 A.2d 1017. This Court concluded that the employee's dispute with her employer was private, notwithstanding her allegation of an amorphous public policy concern of ... 'safety in air transportation.'" *Id.* at 837, 605 A.2d 1017.

Appellant's allegations of public policy are no more clear than those of the employee in *Lee.* While a quality health care system accessible to all is undoubtedly a desirable

goal, appellant's assertion that it represents a well-established public policy finds no support in any specific Maryland legislation. Appellant does not have a claim for wrongful discharge under Maryland law.

### D. *Negligence*

In Count IV appellant alleges a cause of action in negligence. Negligence, of course, requires the existence of four elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty owed by the defendant; (3) a causal relationship between the breach of that duty and the harm suffered; and (4) damages suffered by the plaintiff. *Yousef v. Trustbank Sav., F.S.B.,* 81 Md.App. 527, 535–36, 568 A.2d 1134 (1990). Appellant contends that the contract between him and appellees imposed a duty on each party to use reasonable care in performing the contract, and that appellees breached that duty by terminating him without following the procedural safeguards set forth in the Medical Staff By-laws and the EPM. He has not asserted any other source for a duty owed by appellees.

The short answer to appellant's contention is that there is no contract to support the negligence claim. Appellant correctly notes that tort liability can be imposed based upon contractual privity or its equivalent. *See Yousef,* 81 Md.App. at 536, 568 A.2d 1134; *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 535–37, 515 A.2d 756 (1986). "Before liability may be imposed, however, there must have been a breach of the duty owed under the terms of the contract." *Yousef,* 81 Md.App. at 536, 568 A.2d 1134. We have already decided that no contract for the position of Director of the Department of Medicine existed between appellant and appellees. Thus, appellees owed no contractual duty to appellant and it follows that they owed no tort duty. Appellant's negligence claim cannot survive the collapse of his employment contract claim.

E. *Intentional Infliction of Emotional Distress*

 Finally, appellant contends that the trial court erred in disposing of Count V of his complaint, which sought damages for intentional infliction of emotional distress. This tort consists of four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977). Since the *Harris* decision, Maryland courts have limited recovery to the most extreme and unusual circumstances. The recent decision of the Court of Appeals in *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 326 Md. 663, 607 A.2d 8 (1992), demonstrates just how difficult it is for a plaintiff to satisfy the stringent standards of this tort. In that case, an employee of the defendant brought an action seeking damages for the intentional infliction of emotional distress after she suffered a nervous breakdown in response to her demotion from store manager to assistant manager. The employee suffered from a personality disorder that made her particularly susceptible to stress, but because the employer did not know of her vulnerability, its actions in demoting her did not "reach the level of outrageousness the tort requires," and did not support the employee's cause of action. *Kentucky Fried Chicken*, 326 Md. at 680, 607 A.2d 8. The Court of Appeals noted that while an employment relationship is an important factor to consider when analyzing the employer's behavior, the alleged conduct must still reach the same degree of outrageousness required in other contexts. *Id.* at 678, 607 A.2d 8.

Our review of the record in the case *sub judice* convinces us that appellant cannot satisfy any of the elements of the tort and that appellees are entitled to judgment as a matter of law. Although none of the elements is satisfied, the failure of any one will defeat the cause of action. Thus, we need address only one element. *See Foor v. Juvenile*

*Servs. Admin.,* 78 Md.App. 151, 175, 552 A.2d 947, *cert. denied,* 316 Md. 364, 558 A.2d 1206 (1989). In this case the absence of extreme and outrageous conduct by appellees is particularly glaring.

Extreme and outrageous conduct is behavior that goes "beyond all possible bounds of decency," or is behavior that is "atrocious" or "utterly intolerable in a civilized community." *Harris,* 281 Md. at 567, 380 A.2d 611 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Another factor to consider is whether the defendant knew that the plaintiff was particularly sensitive or susceptible to emotional distress. For example, in *Kentucky Fried Chicken, supra,* the Court of Appeals held that an employer was not liable for intentionally inflicting emotional distress when it demoted an employee without knowledge that the employee had a personality disorder that made her especially susceptible to stress.

In the instant case, appellees' conduct consisted of discharging appellant from his position as the Director of the Department of Medicine in response to appellant's disputes with the manner in which appellees were managing and administering the hospital, and to appellant's organization of the Medical Staff's "No Confidence" vote with regard to appellee Johnson. Such conduct simply does not rise to the level of outrageousness that the law requires to support this cause of action. There is no indication that appellant was peculiarly susceptible to the stress of being terminated from his administrative position, or that appellees knew of any such susceptibility. Appellees terminated the employment of someone with whose services they apparently were no longer satisfied. Such action is an everyday occurrence in our world and rarely "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." This case is not one of those rare situations. *See Kentucky Fried Chicken,* 326 Md. at 680, 607 A.2d 8; *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 59–60, 502 A.2d 1057, *cert. denied,* 306 Md. 118, 507 A.2d 631

(1986) (collection agency's conduct of harassing phone calls and threats to ruin debtor's credit and attach debtor's property was not extreme and outrageous).

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.