957 A.2d 161

**Michael WORSHAM**

v.

**Robert EHRLICH, et al.**

**No. 1442, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Sept. 15, 2008.

**712**

714

Michael C. Workman, Forest Hill, for Appellant.

Rachel B. Goldman, Washington, DC, Dilip B. Paliath, Towson, William E. Seekford, Bel Air.  (Nancy M. O'Connor, Bracewell & Giuliani, LLP on the brief; Washington, DC) (Samuel M. Grant, Preller & Preller on the brief; Towson) (H. Wayne Norman, Jr. on the brief; Bel Air), for Appellee.

Panel: KRAUSER, C.J., JAMES R. EYLER, ROBERT L. KARWACKI, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Michael Worsham, appellant, appeals from the grant of various motions to dismiss [1] his amended complaint in favor of Robert Ehrlich ("Ehrlich"), James Reilly ("Reilly"), David Craig ("Craig"), and Rudolph Giuliani ("Giuliani"), appellees, in the Circuit Court for Harford County. The amended complaint alleged violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* ("TCPA"), and the Maryland Telephone Consumer Protection Act, Maryland Code (2005 Repl.Vol.), § 14–3201 of the Commercial Law Article ("MDTCPA"), and sought damages and injunctive relief. The alleged violations of the TCPA and the MDTCPA were based upon prerecorded political campaign calls soliciting votes, made by or on behalf of appellees, which calls failed to contain the telephone number of the business or entity responsible for the call, in violation of the TCPA. On appeal, appellant contends that the circuit court erred in (1) dismissing the suit because there was no dispute that the calls were made, and that they failed to include the required disclosure, and (2) granting appellee Giuliani's motion to dismiss without holding a hearing pursuant to Maryland Rule 2–311(f), after one was requested by appellant. We shall affirm.

## Procedural and Factual Background

On November 6, 2006, appellant filed a complaint in the circuit court against Ehrlich, Kristen Cox,[2] Reilly, Craig, and

---

**1.** *See* Discussion section, Standard of Review, *infra.*

**2.** Pursuant to the record, Kristen Cox was never served process; thus, was not a party below, and is not a party on this appeal. *See, e.g., State Highway Admin. v. Kee,* 309 Md. 523, 529, 525 A.2d 637 (1987); *Higginbotham v. Public Service Com'n of Maryland,* 171 Md.App. 254, 266, 909 A.2d 1087 (2006) (providing that a named defendant becomes a party to the action only when the defendant is properly served, and a named defendant who is not served is not a party for purposes of determining finality of a judgment pursuant to Maryland Rule 2–602).

Common Sense Ohio. The complaint alleged that during October and November of 2006, the various defendants, each of whom were at that time candidates for public office, or were promoting candidates for public office, initiated unsolicited pre-recorded telephone calls to appellant's residence on their behalf as part of their political campaigns. The caller ID system connected with appellant's telephone did not disclose the point of origin of several of the calls, and none of the calls contained the telephone number of the person or entity responsible for the call. Appellant sought statutory damages under both the TCPA and the MDTCPA, as well as injunctive relief under the TCPA.

On December 6, 2006, Reilly and Craig filed motions to dismiss. Appellant responded on December 27, 2006.

On January 9, 2007, appellant filed an amended complaint, adding Giuliani and Freeeats.com, Inc. as defendants, and attached as an exhibit Verizon "call trace" phone records from the "Verizon Unlawful Call Center," which indicated the phone numbers from which the various calls were initiated.

On January 16, 2007, appellant filed a motion for partial summary judgment, and again attached the aforementioned exhibit, and in addition attached an "Affidavit of Michael Worsham." On January 29, 2007, appellee Ehrlich filed an opposition to that motion, as well as his own motion to dismiss.

On March 22, 2007, appellant filed a notice of dismissal with prejudice as to Common Sense Ohio and Freeeats.com, Inc.

On April 6, 2007, Craig and Reilly filed a supplemental motion to dismiss, and on April 7, 2007, appellant filed a response.

On April 16, 2007, appellant filed another motion for summary judgment.

On May 1, 2007, appellee Giuliani filed a motion to dismiss the amended complaint. The same day, a hearing was held on Ehrlich, Craig, and Reilly's motions to dismiss, and on appellant's motion for partial summary judgment. At the hearing,

appellant conceded that the calls in question were political in nature, and not commercial.

On May 16, 2007, appellant responded to Giuliani's motion to dismiss, and requested a hearing on the motion. On June 18, 2007, appellant filed a second request for hearing.

On June 25, 2007, the court issued a memorandum opinion and order granting appellees' motions to dismiss.[3] The court implicitly acknowledged that it was considering matters outside of the pleadings, i.e., the exhibits to appellant's motion for partial summary judgment, when it set forth the law relating to the conversion of a motion to dismiss to a motion for summary judgment.

The court, in its well-reasoned opinion, addressed the various arguments made by the parties and provided numerous alternative grounds for dismissal. The court ruled that it had personal jurisdiction over appellee Giuliani; that injunctive relief was not available because the political campaigns were over, further calls were unlikely, and appellant sustained no irreparable harm; that it had no subject matter jurisdiction as to appellees Giuliani, Craig, and Reilly, because the aggregate damage claims against each was below the circuit court's threshold jurisdictional requirement of $5,000;[4] that the individual candidates were not proper parties, and that the entities responsible for the calls were the proper parties; that the statutes and regulations did not violate the First Amendment by unduly restricting political speech; that the phone calls were not commercial in nature pursuant to C.F.R. § 64.1200(a), implementing 47 U.S.C. § 227(b), and that pursuant to C.F.R. § 64.1200(b), implementing 47 U.S.C.

---

3. Despite the language in the court's order, which indicates that it was granting "the Defendants' Motions to Dismiss," the ruling was on a motion for summary judgment, not a motion to dismiss. *See, e.g., Haselrig v. Public Storage, Inc.,* 86 Md.App. 116, 118, n. 1, 585 A.2d 294 (1991). *See* Discussion section, Standard of Review, *infra.*

4. *See* Maryland Code (2006 Repl.Vol.), § 4–402(d) of the Courts & Judicial Proceedings Article. (A circuit court has jurisdiction over civil matters when the amount in controversy exceeds $5,000, exclusive of interest, costs and attorney's fees.).

§ 227(d), there was no private right of action; and, that the MDTCPA requires a violation of the federal TCPA, and the Maryland statute can not create a private right of action where none exists under the federal statute because it is preempted by the federal statute.

On July 5, 2007, appellant filed a motion to alter and amend the June 25 opinion and order, arguing, *inter alia,* that the court failed to provide a hearing on Giuliani's motion to dismiss, as is required when one is requested pursuant to Rule 2–311(f).

On August 7, 2007, the court issued a memorandum opinion and order denying appellant's motion to alter and amend, ruling that an additional hearing on Giuliani's motion to dismiss pursuant to Rule 2–311(f) would have been pointless as the court had already heard and considered legal argument on appellant's opposition to the motions to dismiss at the May 1 hearing, and an additional hearing on Giuliani's motion would serve only to hear the same positions reargued.

As we shall explain below, we need not address each of the circuit court's conclusions to reach our decision.

## Discussion

### A. *Parties' Contentions*

#### 1. Appellant

Initially, appellant observes that pursuant to 47 U.S.C. § 227(b)(1)(B), "Congress banned the initiation of *all* pre-recorded voice phone messages," (emphasis in original) to a residential telephone line, without the consent of the called party, unless exempted by the Federal Communications Commission ("the Commission"), pursuant to the authority given to it by TCPA to promulgate regulations. Appellant contends that the Commission, pursuant to the regulation appearing at 47 C.F.R. § 64.1200(b)(2)—which provides that all prerecorded messages shall state the telephone number of the business or entity responsible for the call-prohibited all calls not in compliance. Relying on *Oklahoma ex rel. Edmondson v.*

*Pope,* 505 F.Supp.2d 1098 (W.D.Ok.2007), appellant explains that § 64.1200(b)(2) "applies to *all* prerecorded messages and does not exempt non-commercial, 'political calls,' or any other type of prerecorded calls."

Appellant also argues that subject matter jurisdiction was proper in the circuit court as to Giuliani, Craig, and Reilly, regardless of whether the amount in controversy exceeded the statutory minimum of $5,000, because he was seeking injunctive relief, and only a court of equity can provide the remedy of injunctive relief.

Appellant next argues that the individual candidates were proper parties because the calls were made on their behalf, and the TCPA establishes strict liability and strict vicarious liability. Further, appellant avers that the TCPA is a remedial consumer protection statute that should be liberally construed. Because we shall conclude that no private right of action exists under the statute upon which appellant's claim is based, we need not reach this issue, and we shall not discuss appellees' positions in that regard.

Appellant acknowledges that the MDTCPA makes a violation of the TCPA a violation of Maryland law,[5] and argues that he "alleged a proper violation and claim under the [MDTCPA] ... [thus, he] can maintain a private action for any violation of the federal TCPA or related FCC regulations." Appellant acknowledges that although "consumers do not have a private right of action arising under the federal TCPA § 227(d), because § 227(d) does not contain a private right of action, such as TCPA § 227(b) and § 227(c) ... have," the MDTCPA "creates its own private right of action for any violation of the

---

5.  Maryland Code (2005 Repl.Vol.), § 14–3201 of the Commercial Law Article provides, in relevant part, "A person may not violate ... (2) the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (64 C.F.R. Subpart L)." Section 14–3202 provides, in relevant part, "(b) ... an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover" reasonable attorney's fees and damages.

federal TCPA," including § 227(d) and any regulations promulgated thereto; thus, although a § 227(d) violation is not actionable directly under federal law, it is actionable under the MDTCPA.

Appellant's final argument is that the court erred in dismissing the amended complaint against Giuliani without holding a hearing, when a hearing was requested pursuant to Maryland Rule 2–311(f).

### 2. Appellees

Appellees Ehrlich and Giuliani contend that, as the circuit court found, 47 C.F.R. § 64.1200(b)(2), the regulation serving as the basis for appellant's claim, was not promulgated pursuant to § 227(b), as appellant argued below,[6] but rather, was promulgated pursuant to § 227(d), which does not provide for a private right of action. Thus, according to Ehrlich and Giuliani, in the absence of a private right of action in the first place, the court properly dismissed appellant's amended complaint.

Next, appellees argue that, contrary to appellant's assertion, when there is no private right of action under the federal TCPA, the MDTCPA does not create its own private right of action because the MDTCPA is preempted by the TCPA, and the MDTCPA can not establish an independent private right of action for violations of the federal TCPA.

Appellees, who do not consider appellant's claim for injunctive relief as a question of subject matter jurisdiction, next aver that appellant's request for injunctive relief is moot

---

**6.** As appellees point out, appellant does not explicitly address this argument on appeal, instead focusing his argument on the theory that the requirements in 47 C.F.R. 64.1200(b)(2) apply to all prerecorded voice messages, and that political calls are not exempt. In a footnote, appellees indicate that, because the speech in question was political in nature, they "strongly disagree" with the First Amendment implications of a ruling that the regulation is reasonable, content-neutral, and narrowly tailored so as not to impede protected speech. We need not, and shall not, address any constitutional implications, including those asserted in the brief of Craig and Reilly, as we shall conclude that no cause of action existed in the first place.

because he had no private right of action to begin with and, moreover, that the conduct at issue had ceased. With regard to subject matter jurisdiction, appellees assert that the circuit court correctly concluded that it did not have subject matter jurisdiction over appellee Giuliani because the monetary damages attributable to Giuliani could not be aggregated to meet the amount in controversy requirement.

Finally, appellees contend that the court did not err in failing to hold an additional Rule 2–311(f) hearing on Giuliani's motion to dismiss, as the legal arguments raised in Giuliani's motion and appellant's opposition thereto had already been fully considered at the May 1 hearing, and that in any event, any error was harmless.

Appellees Craig and Reilly argue that the calls in question were not commercial in nature; thus, the identifying information was not required, and moreover, C.F.R. § 64.1200(b), promulgated pursuant to § 227(d), does not provide for a private right of action.

Next, appellees contend that because the federal TCPA preempts the MDTCPA, and because there no private right of action under the federal law, there is no foundation for a state claim.

Appellees also assert that we should affirm the circuit court on the basis of "misjoinder of parties, conduct and alleged separate acts and conduct in the same [c]ount without setting out factual allegations to establish probable cause of a conspiracy created and joinder by each [d]efendant therein." We shall not address this contention, as it was not decided by the circuit court.[7] In any event, it is unnecessary for us to address it because of our disposition of the issues properly before us.

---

7. It is the established rule of Maryland procedure that, "[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the lower court relied in granting summary judgment." *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001). *See* Discussion section, Standard of Review, *infra.*

### B. *Standard of Review*

Ordinarily, in reviewing the dismissal of a complaint on a motion to dismiss, "we look only to the allegations in the complaint and any exhibits incorporated in it and 'assume the truth of all well-pled facts in the complaint as well as the reasonable inferences that may be drawn from those relevant and material facts.'" *Smith v. Danielczyk,* 400 Md. 98, 103–04, 928 A.2d 795 (2007) (quoting *Ricketts v. Ricketts,* 393 Md. 479, 491–92, 903 A.2d 857 (2006)) (quoting in turn, *Porterfield v. Mascari II, Inc.,* 374 Md. 402, 414, 823 A.2d 590 (2003)). As acknowledged by the circuit court in its written opinion, Maryland Rule 2–322(c) provides, however, that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Maryland Rule 2–501, which governs motions for summary judgment. Maryland Rule 2–322(c). Thus, Maryland Rule 2–322(c) gives the trial court discretion to convert a motion to dismiss to a motion for summary judgment by considering matters outside the pleading. *Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 93 Md.App. 772, 784–85, 614 A.2d 1021 (1992). If matters outside the pleading are excluded by the trial court, then it must decide the motion based on the legal sufficiency of the pleading. *Id.* at 782, 614 A.2d 1021. If, on the other hand, the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment. *Okwa v. Harper,* 360 Md. 161, 177, 757 A.2d 118 (2000). In the event that a trial court decides to treat a motion as one for summary judgment, it must provide the parties with a reasonable opportunity to present, in a form suitable for consideration on summary judgment, additional pertinent material. *Antigua Condominium Assoc. v. Melba Investors Atlantic, Inc.,* 307 Md. 700, 719, 517 A.2d 75 (1986). That is because a non-moving party may be prejudiced if a trial court treats a motion to dismiss as a motion for summary judgment by considering matters outside the pleading, but does not give the non-moving party a reasonable opportunity to present material

that may be pertinent to the court's decision, as required by Maryland Rule 2–501. *Green v. H & R Block, Inc.*, 355 Md. 488, 502, 735 A.2d 1039 (1999).

In the present case, appellees' motions to dismiss did not present matters outside the pleadings, but, as indicated above, appellant attached extraneous material, i.e., the affidavit, to his motion for partial summary judgment, and argued his position in support of that motion at the May 1 hearing. Generally the introduction of affidavits of fact will operate to convert a motion to dismiss into a motion for summary judgment. *See Beyond Systems, Inc. v. Realtime Gaming*, 388 Md. 1, 12 n. 10, 878 A.2d 567 (2005); *Green*, 355 Md. at 501, 735 A.2d 1039. There is no indication on the record that the court excluded the facts submitted to it through the exhibit in ruling on the motions to dismiss; thus, we must assume that they were considered. As appellant did present material to the court in the form of the motion and attached exhibits, there is no danger that he was prejudiced by the trial court's treatment of the motion as one for summary judgment. Accordingly, we shall treat the court's ruling as a grant of summary judgment.

The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. *Livesay v. Baltimore*, 384 Md. 1, 9, 862 A.2d 33 (2004). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. Maryland Rule 2–501(f). On appeal, the appellate court will review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party. *Myers v. Kayhoe*, 391 Md. 188, 203, 892 A.2d 520 (2006). In reviewing a grant of summary judgment under Maryland Rule 2–501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Wells Fargo Home Mort-*

*gage, Inc. v. Neal,* 398 Md. 705, 714, 922 A.2d 538 (2007) (quoting *Livesay,* 384 Md. 1, 9–10, 862 A.2d 33 (2004)).

We note that there are no disputes of material fact at issue before us, as appellees do not dispute that the calls were made and that they did not contain the telephone number of the person or entity responsible for them; thus, we shall turn directly to whether appellees were entitled to judgment as a matter of law.

### C. *Subject Matter Jurisdiction*

█ As a preliminary matter, with respect to subject matter jurisdiction, as noted by appellant, the circuit court determined that when appellant's damage claims were aggregated as to each defendant, only appellant's damage claims against Ehrlich reached the amount in controversy requirement for the circuit court to maintain subject matter jurisdiction over him. In its opinion, the court also discussed the remedy of injunctive relief, and the standard for granting such relief, and concluded that appellant's claim for injunctive relief was moot because the elections were over, campaigning had ceased, and injunctive relief is not aimed at remedying past wrongs. The court did not consider the claim for injunctive relief as a basis for subject matter jurisdiction. Because of our ultimate disposition that no cause of action existed for appellant's claims, we need not discuss the merits of the claim for injunctive relief. As we shall explain briefly, however, because appellant sought injunctive relief, the circuit court had subject matter jurisdiction over all appellees, regardless of the amount in controversy.

Injunctive relief is an equitable remedy. Pursuant to Maryland Code (2006 Repl.Vol.), § 4–402(a) of the Courts & Judicial Proceedings Article, "[e]xcept as provided in §§ 4–401 and 4–404 of [subtitle 4, Civil Jurisdiction], the District Court does not have equity jurisdiction." Section § 4–401 lists matters over which the District Court has exclusive original jurisdiction. Pursuant to that section, injunctive relief, except with respect to landlord/tenant disputes and certain other property matters, is not a remedy within the province of the District

Court.  Section 4–404 provides the District Court with concurrent jurisdiction over matters involving domestic violence. Thus, because the District Court does not have general equity jurisdiction, it could not have granted injunctive relief to appellant.  Therefore, without regard to the merits of appellant's claims, he would only have been able to seek injunctive relief in circuit court, providing the circuit court with subject matter jurisdiction.

D.  *Merits of the TCPA and MDTCPA claims*

1.  TCPA

The federal TCPA, U.S.C. § 227, provides, in relevant part:

(b) **Restrictions on use of automated telephone equipment**

(1) **Prohibitions**

It shall be unlawful for any person . . .

\* \* \*

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is . . . exempted by rule or order by the Commission under paragraph (2)(B)[.]

\* \* \*

(2) **Regulations;  exemptions and other provisions**

The Commission shall prescribe regulations to implement the requirements of this subsection.  In implementing the requirements of this subsection, the Commission—

\* \* \*

(B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

(i) calls that are not made for a commercial purpose[.]

\* \* \*

(3) **Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

\* \* \*

(d) **Technical and procedural standards**

(1) **Prohibition**

It shall be unlawful for any person within the United States—

(A) to . . . make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any . . . automatic telephone dialing system in a manner that does not comply with such standards[.]

\* \* \*

(3) **Artificial or prerecorded voice systems**

The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—

(A) all artificial or prerecorded telephone messages

(i) Shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and

(ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual[.]

(f) **Actions by States**

**(1) Authority of States**

Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls ... to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions.

\* \* \*

Pursuant to the directive and authority given it by Congress, the Commission promulgated regulations. C.F.R. § 64.1200 provides, in relevant part:

(a) No person or entity may:

\* \* \*

(2) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call:

(ii) Is not made for a commercial purpose[.]

\* \* \*

(b) All artificial or prerecorded telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business ... must be stated, and

(2) During or after the message, state clearly the telephone number ... of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to

make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

■ Pursuant to the language of the statute, § 227(b) deals with unsolicited calls, not deficient or improperly identified calls. Section (b)(1)(B) *prohibits unsolicited calls* using an artificial or prerecorded voice to a residential phone line, unless the calls are exempted by the Commission pursuant to the authority given it by § 227(b)(2)(B). The Commission, in turn, using language almost identical to the language used in the statute, exempted non-commercial calls in the regulations prescribed by it, specifically C.F.R. § 64.1200(a)(2)(ii). Section 227(b)(3) creates a private cause of action for violation of that subsection, i.e., subsection (b), and the regulations implementing that subsection. *See Adler v. Vision Lab Telecommunications, Inc.*, 393 F.Supp.2d 35, 38 (D.D.C.2005) ("Based on the plain language of the [TCPA] .... [t]he private right of action established by § 227(b)(3) limits the right to 'an action based on a violation of *this subsection'* [i.e., subsection (b) ] or the regulations prescribed under *this subsection*." (quoting 47 U.S.C. § 227(b)(3)) (emphasis in original)). As conceded by appellant, the calls in question were political in nature; thus, non-commercial, and therefore not prohibited pursuant to subsection (b). It follows then, that as the calls were not prohibited, no private cause of action existed pursuant to that subsection.

Section 227(d), on the other hand, does not prohibit calls, but rather *prohibits deficient, improperly identified calls,* or calls "that [do] not comply with the technical and procedural standards prescribed under this subsection," i.e., subsection (d). In other words, subsection (d) provides the "technical and procedural standards" that non-prohibited calls must comply with, specifically, that all artificial or prerecorded telephone messages shall state the identity and telephone number of the person or entity initiating the call. Subsection (d)(3) vests the Commission with the authority to prescribe regulations implementing subsection (d). C.F.R. § 64.1200(b), promulgated by the Commission pursuant to that authority, and incorporating language similar to, but broader than, the language in (d)(3),

provides that all artificial or prerecorded telephone messages identify the entity responsible for the call and state the telephone number of that entity. Subsection (d) does not provide for a private right of action. *See* § 227(d); *Boydston v. Asset Acceptance, LLC,* 496 F.Supp.2d 1101 (N.D.Cal.2007) ("In contrast to section 227(b)(3), the remedy for violations of the procedural and technical standards confers no private right of action."); *Adler,* 393 F.Supp.2d 35, 39 ("Section 227(b) deals with unsolicited [calls], not improperly identified [calls]. A private right of action exists only with respect to the former."); *Klein v. Vision Lab Telecomms., Inc.,* 399 F.Supp.2d 528, 540 (S.D.N.Y.2005) ("[U]nder the TCPA, it is the province of the state attorneys general and the F.C.C. to sue ... for technical violations."); *see* 47 U.S.C. § 227(f)(1).

Construing appellant's complaint liberally, he alleges violations of either § 227(b) or § 227(d) of the statute. As we have explained, however, the calls were not prohibited pursuant to (b) because they were exempt as non-commercial calls by the regulations implementing the statute. Although the calls were exempt, thus not prohibited, they were required to comply with the technical and procedural standards under (d), and the regulations implementing that section. Although the calls did not comply with the technical and procedural standards and were therefore improperly identified calls, there is no private right of action under § 227(d).

We note briefly that appellant's reliance on *Pope* is misplaced. *Pope* did not involve a private right of action, but rather involved an action brought by the state attorney general's office under § 227(f). 505 F.Supp.2d 1098, 1101.

### 2. MDTCPA

Appellant contends that a violation of any provision of the TCPA is actionable under the MDTCPA, even if not actionable directly under the TCPA. According to appellant, even though § 227(d) does not provide for a private right of action, the Maryland statute provides a private right of action under that section. We disagree and explain.

As pointed out above, TCPA § 227(b) restricts the use of automated telephone equipment. Section 227(b)(3) provides that a private cause of action will lie in state courts "if otherwise permitted by the laws or rules of court of a State." The MDTCPA does not describe conduct that constitutes a violation of the Maryland statute. It references whatever constitutes a violation of the TCPA.

In *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 149 Md.App. 219, 815 A.2d 816 (2003), filed on January 29, 2003, we held that the General Assembly had not accepted the jurisdiction conferred through the TCPA, and thus, no private cause of action could be brought in State courts under that act. The MDTCPA was enacted in 2004, effective June 1 of that year. In *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 382 Md. 689, 857 A.2d 1 (2004), filed August 26, 2004, the Court of Appeals reversed this Court and recognized that a private cause of action under the TCPA can be pursued in State courts.

Given the above scenario, it is likely that the General Assembly enacted the MDTCPA merely to enable a private right of action under the TCPA, not to create new causes of action. If the intent were otherwise, on the facts of this case, the new cause of action would be preempted.

47 U.S.C. § 227(e) provides:

**Effect on State law**

**1) State law not preempted**

*Except for the standards prescribed under subsection (d) of this section* and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—

\* \* \*

(B) the use of automatic telephone dialing systems;

(C) the use of artificial or prerecorded voice messages; or

(D) the making of telephone solicitations.

(Emphasis added).

The plain language of § 227(e) provides that the States may create their own more restrictive standards than the federal TCPA, *except with regard to subsection (d)*. As explained above, appellant's only potential claim was under subsection (d), which provides for no private right of action, and subsection (e) makes it clear that states can not create a private right of action under subsection (d).

### E. *Rule 2–311(f) hearing*

As noted above, appellant's motion to alter or amend alleged, *inter alia,* that the court erred in failing to provide a hearing on Giuliani's motion to dismiss, as is required when one is requested pursuant to Rule 2–311(f). Appellant's motion was denied, and we review the denial of a motion to alter or amend for abuse of discretion. *Prince George's County v. Hartley*, 150 Md.App. 581, 586–87, 822 A.2d 537 (2003).

Maryland Rule 2–311(f) provides:

**Hearing—Other motions.** A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall request the hearing in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but the court may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

As appellant asserts, despite his request for a hearing on Giuliani's motion to dismiss the amended complaint, no hearing was held on that motion. We agree with appellant that it was error for the court not to hold a hearing, but the error was harmless. Appellant brought the same claims against Giuliani as he did against the other appellees, and his arguments were purely questions of law. Appellant had a full and fair opportunity to present his arguments with respect to the

**732**

law at the motions hearing on May 1. *See, e.g., Vinogradova v. Suntrust Bank, Inc.*, 162 Md.App. 495, 511, 875 A.2d 222 (2005). A second hearing would have been merely duplicative.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**